IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | Case No. CR09-3044 |
| vs. | ORDER REGARDING COMPETENCY TO STAND TRIAL |
| BARBARA ANN KRAUTH, | |
| Defendant. | |

## TABLE OF CONTENTS

I.   *INTRODUCTION*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  *PROCEDURAL HISTORY*. . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. *RELEVANT FACTS*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     A.   *Background Information*. . . . . . . . . . . . . . . . . . . . . . . 3
     B.   *Mental Health History*. . . . . . . . . . . . . . . . . . . . . . . . 4
     C.   *Competency Restoration at FMC-Carswell*. . . . . . . . . . . . 5
     D.   *Evaluation by Dr. Mary Kenning*. . . . . . . . . . . . . . . . . 7

IV.  *DISCUSSION*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V.   *ORDER*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## I. INTRODUCTION

On the 30th day of November 2010, this matter came on for hearing to determine whether the Defendant is competent to stand trial. The Government was represented by Assistant United States Attorney C.J. Williams. Defendant Barbara Ann Krauth appeared personally and was represented by her attorney, Jane Kelly.

## II. PROCEDURAL HISTORY

On December 8, 2009, Defendant Barbara Ann Krauth was charged by Indictment with possession of a forged security (Count 1), access device fraud (Count 2), and aggravated identity theft (Count 3). At her arraignment on December 16, 2009, Defendant entered a plea of not guilty, and trial was scheduled for February 16, 2010. Defendant was released under supervision.

On January 13, 2010, Defendant's counsel filed a motion requesting a hearing "to determine the mental competency of the defendant," pursuant to 18 U.S.C. § 4241(a).[1] The Government did not resist Defendant's motion for a competency hearing, but asked that Defendant be committed to the custody of the attorney general for a psychological or psychiatric examination prior to the hearing. The Court granted the Government's request for a psychological or a psychiatric examination, but ordered that it be conducted on an out-of-custody basis.

On April 20, 2010, this matter came on for hearing pursuant to 18 U.S.C. § 4241(a), to determine Defendant's competency to stand trial. The written psychological evaluation reports of the Government's expert (Dr. Steven C. Norton) and the Defendant's expert (Dr. William Hoekstra) were introduced as exhibits. Both experts agreed that Defendant was not then competent to stand trial. The Court found that Defendant was "presently suffering from a mental disease or defect rendering her mentally incompetent to the extent that she is unable to understand the nature and consequences of the proceedings against her and to assist properly in her defense." Accordingly, pursuant to 18 U.S.C. § 4241(d), the Court committed Defendant to the custody of the attorney general for appropriate hospitalization.

Defendant arrived at the Federal Medical Center in Carswell, Texas ("FMC-Carswell") on April 30, 2010. She was released from FMC-Carswell on August 27, 2010. In a report dated September 8, 2010, Warden Joe Keffer certified that in the opinion of the

---

[1] Also on that date, Defendant filed a Notice of Insanity Defense. *See* docket number 10.

clinical staff, Defendant "has now recovered from symptoms of a mental disease or defect to the extent she is competent to proceed." *See* Government's Exhibit 1.

On October 6, 2010, Defendant was evaluated at her attorney's request by Dr. Mary Kenning. It is Dr. Kenning's opinion that Defendant is not presently competent to assist in her own defense. *See* Defendant's Exhibit A.

The issue presented at the instant hearing is whether Defendant is competent to stand trial, pursuant to 18 U.S.C. § 4241(d).

### III. RELEVANT FACTS
#### A. Background Information

Defendant Barbara Ann Krauth was born in 1971 and is currently 39 years old. She is the second youngest of six children in the family. Recently, Defendant learned that her mother's husband is not her biological father. Defendant told Dr. Christine Anthony that "Mr. Krauth acted negatively toward her throughout her life because he was aware she is not his biological child."[2] While at FMC-Carswell, Defendant reported "an isolative and abusive childhood," where she was not permitted to have friends. However, a hospital report from when Defendant was 16 years old describes her as having friends, and states that "Barb spends time during the weekends going to movies or driving around."

Defendant reported that she was sexually assaulted at the age of 15 and was subsequently hospitalized for psychiatric treatment. During that hospitalization, Defendant disclosed that on earlier occasions she had been sexually abused by two of her brothers. More recently, Defendant also reported that she was sexually abused by adult friends of her parents while at a bar, and by her sister's boyfriends.

Defendant was a good student in high school, but was occasionally disciplined for circumstances which she attributed to others. For example, Defendant claims that one of her brothers placed alcohol in her locker, resulting in her suspension from school.

---

[2] Christine Anthony, Ph.D., is a forensic psychologist employed at FMC-Carswell.

3

Defendant graduated from high school in 1989. Two days prior to her graduation, Defendant was in a serious car accident. Defendant told Dr. Anthony that she had a massive head injury, was in a coma for approximately eight days, had her spleen and appendix removed, suffered a broken arm and leg, and was paralyzed from the waist down. Defendant reported that she regained the use of her legs after six months, and she currently does not have any observable motor impairments. A physical examination of Defendant at FMC-Carswell did not reveal evidence of surgery, however, and the examining doctor concluded that Defendant's description of her injuries was "questionable." Defendant's claim that she had cervical cancer and breast cancer is also apparently not supported by the medical records.

At age 23, Defendant became pregnant after allegedly being sexually assaulted by a stranger. After giving birth to her daughter, Defendant claims she was coerced by her father to marry one of his friends. Apparently, the marriage lasted only a couple of weeks because her husband was physically abusive. Defendant's daughter now lives with Defendant's sister, and they have had no contact for over a year.

Defendant received training as a certified nurse's aide, and has been employed as a receptionist and bookkeeper. Since 2007, however, Defendant has received social security disability benefits as a consequence of her mental health condition. Approximately two years ago, Defendant met Jess Paulson, another resident in her apartment building. The two of them have been living together since December 2009, and were married on September 16, 2010 – shortly after Defendant returned from FMC-Carswell. Mr. Paulson assists Defendant in structuring her day and managing her medications, and is also her social security benefits payee.

### B. *Mental Health History*

After being sexually assaulted as a teenager, Defendant was hospitalized for more than one month, and was treated for depression and post-traumatic stress disorder (PTSD). Defendant told Dr. Anthony at FMC-Carswell that she had been hospitalized "about

20 times" for psychiatric symptoms, although there are apparently no medical records which support that assertion.

In August 2006, Defendant began receiving outpatient services for depression. In November 2006, Defendant was involuntarily committed to the psychiatric unit at Mercy Medical Center for one week, due to suicidal ideation. Since that time, she has received weekly counseling from Pam Little, a licensed social worker, and has been prescribed psychiatric medication by Samantha Huguelet, a nurse practitioner.

Defendant told Dr. Anthony that she has attempted suicide "too many times to count." In her report, Dr. Anthony states that Krauth's most recent attempt occurred in August 2009, when Defendant attempted suicide by inhaling carbon monoxide. Dr. Kenning states in her report that Defendant "indicated she was hospitalized again in 2007 after a suicide attempt with carbon monoxide and most recently in August, 2009 after a suicide attempt with medication."

### C. Competency Restoration at FMC-Carswell

On April 20, 2010, the Court determined that Defendant was not then competent to stand trial. Accordingly, Defendant was committed to the custody of the attorney general for appropriate hospitalization. Defendant arrived at FMC-Carswell on April 30, 2010, where she remained for approximately four months.

While at FMC-Carswell, Defendant was evaluated through a process of observation, testing, and interviews. According to Dr. Anthony, Defendant was an unreliable historian and exaggerated her symptoms. Defendant initially minimized her prior criminal record, and blamed it on others. Defendant also claimed that she could not recall details of earlier events, until she was told that failure to demonstrate competency may extend her stay at FMC-Carswell.

When Defendant was hospitalized in 2006, an MMPI suggested that she exaggerated her symptoms. A personality assessment inventory administered by Dr. Hoekstra in conjunction with the first competency hearing in this case suggested that Defendant had

again exaggerated her symptoms. These results were consistent with testing performed by Dr. Anthony. When taking a "personality assessment inventory," Defendant "made a volitional attempt to portray herself in a negative manner." A "structured interview of reported symptoms test" was then given, which showed "definite feigning" on three scales and "probable feigning" on two scales, out of a total of ten scales. According to the manual associated with the test, these results reflect "a 100% chance she is malingering."

Upon her arrival at FMC-Carswell, Defendant's medications were reviewed by the medical staff. Because of the health risk associated with the interactions of certain medications, it was decided to take the Defendant off of benzodiazepines (Valium). Other adjustments were made to her medication and Defendant briefly displayed "confused behavior and odd speech." She was temporarily prescribed an additional medication to help with the symptoms, however, and "recovered from benzodiazepine withdrawal over the next several days."

While at FMC-Carswell, Defendant complained of auditory, visual, olfactory, and tactile hallucinations. However, no one observed Defendant engage in any activity which would appear to be in response to any sort of "internal stimuli." Apparently, the first time Defendant had complained of olfactory and tactile hallucinations was while she was at Carswell. Moreover, Dr. Anthony opined that the way Defendant described the hallucinations was "particularly odd." Defendant claimed that she would not suffer any hallucinations for three or four days, and then one day would have hallucinations for a few hours. According to Dr. Anthony, "this is just a very unusual presence of psychotic symptoms." In addition, visual hallucinations about other people tend to be of "normal people of normal size," while Defendant described looking at people and seeing their "faces melt." According to Dr. Anthony, such a dramatic hallucination would be "very unusual." Defendant told Dr. Norton that the auditory hallucinations have occurred for many years, but the records do not support that claim.

Defendant was required to attend "competency restoration classes" while at FMC-Carswell. Defendant was able to articulate an understanding of the charges against her, the roles of the various participants in the process, and the options available to her. Defendant was compliant with her medications while at FMC-Carswell, her hygiene was good, and her room was kept "tidy and neat." Although she reported having difficulty sleeping at night, Defendant was observed sleeping during the daytime. Defendant gained weight while at FMC-Carswell. According to Dr. Anthony, "[h]er thought process was rational and free from any derailment, circumstantiality, or disturbance of logic."

At the completion of her stay at FMC-Carswell, Dr. Anthony diagnosed Defendant as suffering from "major depressive disorder, recurrent." Dr. Anthony opined, however, that Defendant's depression was "relatively mild." While Defendant's diagnosis of PTSD may have been appropriate at one time, Dr. Anthony testified that Defendant no longer shows symptoms related to this disorder and, therefore, a diagnosis of post-traumatic stress disorder is not warranted. Furthermore, Dr. Anthony believes that a diagnosis of a psychotic disorder is not warranted. Dr. Anthony concluded that Defendant is able to understand the nature and consequences of the proceeding against her and to assist properly in her defense. Accordingly, Dr. Anthony believes that Defendant is competent to stand trial.

### D. *Evaluation by Dr. Mary Kenning*

On her return from FMC-Carswell, Defendant was evaluated at her attorney's request by Dr. Mary Kenning in Edina, Minnesota. After reviewing Defendant's records, Dr. Kenning met with Defendant for approximately two to two-and-a-half hours. While Dr. Kenning acknowledged that Defendant may have been competent to stand trial upon leaving FMC-Carswell on August 27, 2010, Dr. Kenning believes that Defendant was not competent to stand trial when evaluated by her on October 6, 2010.

When asked whether she believed Defendant was a reliable historian, Dr. Kenning noted that the first two evaluators (Drs. Norton and Hoekstra) said Defendant could not

remember significant parts of her relevant history. Dr. Kenning believes that Defendant was not "very engaged in those evaluations," and simply "wasn't terribly cooperative all the time with providing her history." The history Defendant provided to Dr. Kenning was false in several respects. First, Defendant reported that she was unable to come out of her room at FMC-Carswell, while in fact – according to Dr. Anthony – she "came out of her room a lot." Second, Defendant told Dr. Kenning that upon arriving at FMC-Carswell, she was "abruptly taken off of all her medications." That is not true. Third, Defendant reported that she had stopped eating while at Carswell, until "a guard took pity on her and fed her as well as spending time with her." Defendant gained weight while at FMC-Carswell. Dr. Kenning also noted that the records from Defendant's 2006 hospitalization indicate that she would "exaggerate problems" and was "attention seeking."

According to Dr. Kenning, Defendant has consistently reported that she has problems with hallucinations. Dr. Kenning admitted, however, that the pattern described by Defendant at FMC-Carswell – hallucinations for three or four days and then days without hallucinations – is "a fairly unusual course" that "doesn't fit with what you typically see." Dr. Kenning also acknowledged that Defendant's description of seeing "faces melt" is "a somewhat unusual symptom to have occur." In fact, Dr. Kenning testified that Defendant's claims of olfactory and tactile hallucinations "are typically considered for signs of malingering because they are so rare and they usually only occur in people who have organic brain damage." According to Dr. Kenning, it is likely that Defendant's claims of auditory and visual hallucinations are "anxiety related," and Defendant is "inclined to put a lot of emphasis on them and describe them as hallucinations." Dr. Kenning testified "that part I think is exaggerated." When asked whether Defendant's claims of olfactory and tactile hallucinations could "be explained by anxiety," Dr. Kenning testified "I doubt it." During her interview with Defendant, Dr. Kenning saw no indication that she was "internally distracted" or suffering from "thought blocking."

Dr. Kenning also conceded that Defendant's test results demonstrate a "lack of effort." However, Dr. Kenning believes that Defendant's "depression may have played a role in that as well." In addition to problems with depression and anxiety, Dr. Kenning believes that Defendant "has some personality disorder characteristics that complicate her recovery."

Dr. Kenning testified that Defendant's mental health condition impacts her ability to make appropriate judgments. In testing Defendant using hypothetical examples, Defendant "seemed to have a great deal of difficulty weighing alternatives." According to Dr. Kenning, because of Defendant's depression and personality disorder issues, she is "inclined to sort of get caught up in her symptoms and overemphasize them; and I think she gets pretty easily overwhelmed and shuts down or gets resistant."

Dr. Kenning believes that Defendant is not presently competent to stand trial. Dr. Kenning believes that Defendant's competency can be restored, however, by following those recommendations outlined in her report. Among other things, Dr. Kenning recommends a mild dose of an anxiety relieving medication, if needed for Defendant to participate in a courtroom proceeding. According to Dr. Kenning's report, the steps necessary to return Defendant to competency can be completed in "three months or less."

## IV. DISCUSSION

Defendant Barbara Ann Krauth asserts that she is not presently competent to stand trial. 18 U.S.C. § 4241(d). "A defendant is mentally incompetent to stand trial if a preponderance of the evidence indicates that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. *United States v. Ghane*, 490 F.3d 1036, 1040 (8th Cir. 2007). In resolving the competency issue, the Court may consider "numerous factors, 'including expert medical opinions and the court's observations of the defendant's demeanor.'" *Id.* (quoting *United States v. Robinson*, 253 F.3d 1065, 1067 (8th Cir. 2001)).

Which party bears the burden of proof in this regard has not been firmly established. In *United States v. Whittington*, 586 F.3d 613 (8th Cir. 2009), the Court noted a circuit split on this issue. The Fourth and Tenth Circuits place the burden of proof on the defendant to prove incompetence, while the Third, Fifth, Seventh, and Ninth Circuits place the burden of proof on the Government to prove competence. *Id.* at 617. The Eleventh Circuit has taken the position that the burden falls on the party making the motion to determine competency, and the Second Circuit has declined to reach the issue, noting that "the allocation of the burden of proof to the defendant will affect competency determinations only in a narrow class of cases where the evidence is in equipoise." *Id.* at 618. While noting that "[t]he guidance of the Supreme Court, and the recent precedent of this circuit, support the government's position that the burden is on the defendant to prove incompetence by a preponderance of the evidence," the Court in *Whittington* concluded that it "need not address the burden of proof issue further because we conclude the district court's finding of competency in this case did not depend upon the allocation of the burden of proof." *Id.*

A determination of competency pursuant to 18 U.S.C. section 4241(d) has two parts. "The first prong of the competency test requires the district court to determine if the defendant has 'a rational as well as factual understanding of the proceedings against him.'" *Ghane*, 490 F.3d at 1040 (quoting *Robinson*, 253 F.3d at 1067). Here, it appears undisputed that Defendant has a factual understanding of the proceedings against her. Dr. Anthony testified that Defendant was able to describe the charges against her, the respective roles of the participants in the proceeding, and potential outcomes. Defendant told Dr. Kenning that she has three charges against her, and stated that "one involves a credit card and the other two, I don't know." However, Defendant admitted that she has avoided reading the Indictments "as she does not understand the allegations and becomes upset." Defendant has regularly and intentionally "underperformed" when subjected to testing or answering questions. Dr. Kenning testified that Defendant was "not motivated"

when being evaluated by others, and was "unhappy about being evaluated again." A preponderance of the evidence established that Defendant has a factual understanding of the proceedings against her.

A preponderance of the evidence also established that Defendant has a rational understanding of the proceedings. According to Dr. Anthony's report, Defendant "appropriately identified the different plea options available and had an accurate understanding of the plea agreement process." Dr. Anthony reported that Defendant "described a plea agreement she would be willing to accept," and noted charges that "she was hoping to get dropped." Dr. Kenning's report also reflects that Defendant has an understanding of the charges and has rationally thought about possible outcomes. Defendant told Dr. Kenning that "she has asked to plead guilty and to be provided with mental health care while on release in the community as part of her sentence." In addition, Dr. Kenning opined that Defendant may be "unmotivated to recover from her symptoms as she maintains the hope that she will be allowed to avoid prison and serve any assigned period of incarceration under supervision in the community instead." Accordingly, the Court finds the "first prong" of the competency test has been met.

"The second prong of the competency test requires the district court to determine whether the defendant is able to assist properly in his defense." *Ghane*, 490 F.3d at 1040. Here, Dr. Kenning questions Defendant's ability to assist properly in her defense, citing Defendant's performance on the MacArthur Competence Assessment Tool-Criminal Adjudication. While Defendant's score did not show any impairment in her understanding of legal terms, Defendant scored in the "significantly impaired range" in the "reasoning about legal issues" and "appreciation of own legal situation" domains. Dr. Kenning suggests that these results "indicate strongly that she is not competent to assist in her defense at this point." Citing Defendant's intentional underperformance on tests conducted by all four experts who have evaluated Defendant in connection with this case,

Dr. Anthony believes that Dr. Kenning placed too much emphasis on the results of the MacArthur test.

After considering all of the facts and circumstances, the Court concludes that Defendant, when motivated to do so, is able to assist properly in her defense. The evidence supports a finding that Defendant has consistently exaggerated and fabricated symptoms, while intentionally underperforming on standardized tests. Defendant has not been forthcoming with the evaluators, and has intentionally attempted to portray herself in a poor light, hoping that the potential consequences of her alleged criminal behavior will be minimized. Defendant has attempted to manipulate the evaluation process in an attempt to obtain a favorable result. While Defendant undoubtedly suffers from depression, her mental health condition does not prevent her from being able to understand the nature and consequences of the proceedings, or to assist properly in her defense. Defendant may find the prospect of facing trial and possible imprisonment distressing – most defendants do – but I believe she has the ability to understand the proceedings and assist in her defense. Therefore, the Court finds that Defendant is competent to stand trial.[3]

### V. ORDER

IT IS THEREFORE ORDERED that Defendant is hereby found **COMPETENT** to stand trial.

DATED this 16th day of December, 2010.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[3] The Court reaches this conclusion regardless of whether the burden of proof is on the Defendant to prove incompetence, or the burden of proof is on the Government to prove competence. Accordingly, like the Court in *Whittington*, I find it unnecessary to definitively allocate the burden of proof.